UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MONICA J. WARD,

        Plaintiff,

vs.                                      Case No.  3:10-cv-1031-J-MCR

MICHAEL J. ASTRUE, Commissioner of the
Social Security Administration,

        Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits.  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons set forth herein, the Commissioner's decision is **REVERSED** and **REMANDED**.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits ("DIB") on March 24, 2003, alleging an inability to work since October 4, 2002.  (Tr. 15).  The Social Security Administration ("SSA") denied the application initially and upon reconsideration.  (Tr. 26-30).  Plaintiff then requested and received a hearing before an Administrative Law Judge, James R. Russell ("ALJ Russell"), on January 12, 2006.  (Tr. 34-41, 54-59).  On March 27, 2006, ALJ Russell issued a decision finding Plaintiff was not disabled.  (Tr. 12-23).  The Appeals Council denied Plaintiff's request for review of ALJ Russell's

_____

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Doc. 16).

1

decision on July 7, 2006.  (Tr. 7).

Plaintiff filed a complaint in this Court appealing that decision and on August 8, 2007, the United States District Court issued an order remanding Plaintiff's case to the Commissioner with instructions for the ALJ to re-evaluate Plaintiff's allegations of nausea and vomiting; reconsider the opinion of Dr. Perez; if Dr. Perez's opinion was rejected, then to consider ordering a consultative examination; to ensure all impairments were considered in the evaluation of Plaintiff's residual functional capacity ("RFC"); to reconsider Plaintiff's pain complaints; and to provide specific reasoning for rejecting Plaintiff's testimony.  (Tr. 641).  Thereafter, the Appeals Council remanded the case to ALJ Stephen C. Calvarese ("ALJ Calvarese").  (Tr. 611-622).  ALJ Calvarese held a supplemental hearing on July 31, 2008 (Tr. 657-60) and issued a decision finding Plaintiff not disabled on August 28, 2008.  (Tr. 622).  Plaintiff timely filed her Complaint in the U.S. District Court on November 9, 2010.  (Doc. 1).

## II.    NATURE OF DISABILITY CLAIM

### A.    Basis of Claimed Disability

Plaintiff claims to be disabled since October 4, 2002, due to complications following gastric bypass surgery including abdominal pain, nausea, probable fibromyalgia, and back pain.  (Tr. 613).

### B.    Summary of Evidence Before the ALJ

Plaintiff was 38 years of age on the date ALJ Calvarese's decision was issued. (Tr. 849).  She has a high school education and past relevant work experience as a customer service representative, office manager, secretary, and collections clerk.  (Tr.

125-26, 570). Plaintiff's medical history is detailed in the record and will be summarized here. Because Plaintiff's appeal only deals with her pain and nonexertional limitations, the Court will focus its summary on the records addressing those impairments.

Plaintiff underwent gastric bypass surgery in September 2002. (Tr. 301-02). Shortly thereafter, Plaintiff began suffering from vomiting, abdominal pains, and other complications. (Tr. 284-85, 291-92). In December 2002, she was referred to Dr. Radi because of continued vomiting. (Tr. 268-73). In response, Dr. Radi performed three upper GI panendoscopies between December 4 and December 31, 2002. (Tr. 268, 275, 279).

From January to March 2003, Dr. Sooriash treated Plaintiff for complications from the bypass surgery and Plaintiff continued to experience nausea and vomiting. (Tr. 304-30). On January 17, 2003, Dr. Sooriash performed a reversion of pouch, enteric anastomosis, and gastronomy. (Tr. 304-11). Plaintiff was admitted to Memorial Hospital on March 11, 2003 due to nausea, vomiting, and the inability to eat or drink for several days. (Tr. 311-37). Dr. Radi continued to treat Plaintiff through July 2003 for epigastric pain, vomiting, nausea, and abdominal pain. (Tr. 331, 356-57, 381-83).

Dr. Yasrebi, a bariatric surgeon, treated Plaintiff from October through November 2003. (Tr. 369-72, 416-18). Plaintiff reported nausea, vomiting, abdominal pain, heartburn, as well as pain in her feet and hands. (Tr. 372). A CT scan of her abdomen on March 10, 2003 revealed several lesions on her spleen and liver, which were determined benign by a November 19, 2003 scan. (Tr. 436-39). Plaintiff reported headaches, vomiting, nausea, tingling in her hands and feet, and multiple areas of pain to Dr. House on November 25, 2003. (Tr. 384-88). Because of pain and tenderness

over much of her body, Dr. House opined Plaintiff might have osteoarthritis without redness or swelling.  Id.

On March 3, 2005, Dr. Waldron examined Plaintiff for continued abdominal, back, and neck pain as well as numbness in her lower legs and arms.  (Tr. 450-51).  On March 10, 2005, Plaintiff entered the Baptist Hospital emergency room with excruciating back pain and tingling and numbness of the legs.  (Tr. 452-60).  An examination revealed Plaintiff was unable to stand, bend, or raise her legs straight.  Id.  A lumbar spine x-ray showed bilateral spondylolysis with spondylolisthesis of the L5 on S1 and degenerative changes of the lower lumbar spine.  (Tr. 489).  An MRI of the lumbar spine showed anterior spondylolisthesis of L5 relative to S1 with bilateral pars defects at L5. (Tr. 491-92).

Dr. Groblewski, a neurologist, examined Plaintiff on June 21, 2005, for numbness and tingling in her upper and lower extremities.  (Tr. 515-19).  Plaintiff still suffered persistent nausea, vomiting, fatigue, and abdominal pain.  Id.  Dr. Groblewski diagnosed Plaintiff with paresthesias.  Id.  Two days later, an MRI of her cervical spine showed "focal posterior disc protrusion or disc entophyte complex to the left midline at the C5-6 level" and mild compression.  (Tr. 528).  As a result, Plaintiff was diagnosed with chronic persistent paresthesias of the limbs, chronic abdominal pain, cord contact at the C5-6 disk, and mild compression of the spinal cord.  (Tr. 522-23).

On September 7, 2005, Dr. Perez, a rheumatologist, examined Plaintiff.  (Tr. 533).  Tenderness and the presence of multiple trigger points led to a diagnosis of fibromyalgia syndrome.  Id.  Dr. Perez continued to treat Plaintiff through May 2006. (Tr. 554-61).  On October 19, 2005, Dr. Perez completed a residual functional capacity

form suggesting Plaintiff met the criteria for fibromyalgia.  (Tr. 529-32).

On October 12, 2005, Dr. Smith, a spinal surgeon, examined Plaintiff.  (Tr. 546-48).  Examination revealed Plaintiff was stiff, straight, and splinted along the spine.  (Tr. 548).  She had a broad back, which was rather flat and without much lumbar lordosis.  Id.  Dr. Smith diagnosed her with spondylolisthesis, L5-S1.  Id.  A follow-up visit on December 21, 2005, confirmed Plaintiff's continuing lower back pain.  (Tr. 535).  From May 2006 to March 2007, Dr. Stanescu treated Plaintiff for severe back pain, degenerative joint disease, degenerative disc disease, and lumbar facet arthropathy.  (Tr. 737-44).  Over the same period, Dr. Rowe examined Plaintiff and opined Plaintiff had chronic low back pain, degenerative joint disease, degenerative disc disease, and spondylolisthesis.  (Tr. 702-32).  On November 3, 2006, Plaintiff underwent an MRI of the lumbar spine that revealed grade 1 spondylolisthesis of the L5 on S1 secondary to the presence of bilateral L5 spondylolytic part defects and moderate to severe degenerative disc disease at L5-S1.  (Tr. 733-35).  Plaintiff continued to undergo treatment from Dr. Perez through May 2008.  (Tr. 750-69, 779, 800-08).  Dr. Perez maintained a diagnosis of fibromyalgia.  (Tr. 750-56).  Plaintiff was also treated by Orthopedic Associates for back pain from May to November 2007.  (Tr. 745-49, 772-78).  She was diagnosed with grade 1 spondylolisthesis and bilateral lower extremity radiculpathy.  (Tr. 773).

Following the remand by United States Magistrate Judge Snyder, ALJ Calvarese ordered examination of Plaintiff by a consultative physician.  (Tr. 787-99).  During the April 14, 2008 examination by Dr. Drucker, Plaintiff stated she had nausea all the time, achiness all over, back pain, depression, and headaches.  (Tr. 787).  She reported

difficulty sitting and standing for prolonged periods of time due to her spondylolisthesis. Id. Examination revealed tenderness over trigger points and decreased range of motion. (Tr. 790). She was diagnosed with obesity, abdominal pain, nausea, probable fibromyalgia, stress, and depression. Id. Dr. Drucker opined it was unlikely Plaintiff would be capable of performing work-related activities sedentary in nature or requiring strenuous exertion. Id. Dr. Drucker opined Plaintiff could never lift or carry more than twenty pounds due to spasms and tenderness of her lumbar spine. (Tr. 794). She could only sit for thirty minutes at a time and for three hours total in an eight hour day. (Tr. 795). She could only stand or walk for one hour at a time and stand for a total of three hours and walk for a total of two hours in an eight hour day. Id.

On May 29, 2008, Dr. Haycock opined Plaintiff would need L5-S1 decompression fusion, but surgery would not be effective in alleviating her back pain because of the multilevel nature of her degenerative disc disease. (Tr. 812).

### C. Plaintiff's Testimony at the Hearing

Plaintiff's hearing was held on July 31, 2008, before ALJ Calvarese. (Tr. 813-60). At this hearing, Plaintiff claimed she was in constant pain and the pain was usually an eight on a scale of one to ten. (Tr. 831). Her pain was a five in 2003 and had progressively worsened. (Tr. 831-32). She also stated she was unable to work her prior jobs as a customer service representative and office manager because of her inability to sit for a prolonged period of time. (Tr. 837). Also, her pain medications caused drowsiness and lack of concentration and attention. Id. Plaintiff testified that on a typical day, she did not do "a whole lot of anything because [she] [could not] sit still for very long periods of time." (Tr. 840). She stated she isolated herself socially and had

no interest in being around others because she felt self-conscious about the way her medications affected her body. (Tr. 841, 847). She did not cook, clean, or do laundry. (Tr. 841). She did not read because she found it too hard to concentrate on the book. Id. Sitting in a chair, watching television, and sleeping were her main activities. (Tr. 842). Plaintiff testified she was able to drive 100 yards, at most, and if she went shopping, she became uncomfortable after twenty minutes. (Tr. 845-46). Her doctors told her she should not lift more than 10 pounds. (Tr. 843). She stated she could not sit still or lay down for very long periods of time. (Tr. 840). Normally, Plaintiff sat until her back hurt, laid flat until her legs and back hurt, and then had to "move around a little bit." Id.

### D. Summary of ALJ Calvarese's Decision

A plaintiff is entitled to disability benefits when she is unable to engage in a substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve (12) months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 404.1520. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limits her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520©. Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent

her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth,

if a claimant's impairments (considering her residual functional capacity, age, education,

and past work) prevent her from doing other work that exists in the national economy,

then she is disabled.  20 C.F.R. § 404.1520(f).  Plaintiff bears the burden of persuasion

through step four, while at step five, the burden shifts to the Commissioner.  <u>Bowen v.

Yuckert</u>, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287 (1987).

In the instant case, ALJ Calvarese determined Plaintiff last met the insured status

requirements of the Social Security Act on December 31, 2005.  (Tr. 613).  At step one,

the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged

onset date, October 4, 2002.  <u>Id.</u>  At step two, the ALJ found Plaintiff had the following

severe impairments: "obesity; status post gastric bypass surgery times two; continued

abdominal pain and nausea; probable fibromyalgia; stress and urge incontinence;

adjustment disorder with depressed mood; hip, knee and back pain."  <u>Id.</u>  The ALJ

found Plaintiff's mental impairments "caused no limitation in the areas of activities of

daily living . . . [and] mild limitation in maintaining concentration, persistence, and pace

and there were no episodes of deterioration or decompensation [in work or work-like

settings]."  (Tr. 614).  At step three, the ALJ stated "the claimant did not have an

impairment or combination of impairments that met or medically equaled one of the

listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  <u>Id.</u>

With respect to Plaintiff's RFC, ALJ Calvarese found Plaintiff was able to:

> Lift and carry 20 pounds occasionally and 10 pounds
> frequently. She was able to stand for 3 hours and walk for 2
> hours in an 8-hour workday without the use of a cane.  She
> could operate motor vehicles.

Id.  In making this determination, the ALJ found Plaintiff's impairments could reasonably be expected to produce the alleged symptoms.  (Tr. 620).  However, the ALJ found Plaintiff's assertions "concerning the intensity, persistence, and limiting effects of the alleged symptoms [were] not credible to the extent they [were] inconsistent with the residual functional capacity assessment."  Id.

At step four, the ALJ determined Plaintiff was unable to perform her past relevant work as a customer service representative, office manager, secretary, or collections clerk as they were actually performed.  Id.  However, "considering [Plaintiff's] age, education, work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed."  (Tr. 621).  As such, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act at any date from October 4, 2002 through December 31, 2005.  (Tr. 622).

III.    ANALYSIS

A.    The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant

evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Richardson, 402 U.S. at 401 and Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**B.     Issues on Appeal**

Plaintiff's brief raises four main arguments regarding the alleged errors committed by ALJ Calvarese.  Specifically, Plaintiff claims the ALJ erred by failing to give the opinion of Plaintiff's treating physician, Dr. Perez, controlling weight.  Next, Plaintiff argues the ALJ's partial reliance on Dr. Drucker's evaluation was improper. Plaintiff also argues the ALJ failed to reconcile differences between the vocational expert's testimony and the Dictionary of Occupational Titles, a discrepancy raised by Plaintiff after the supplemental hearing.  Finally, Plaintiff argues the ALJ improperly evaluated Plaintiff's testimony and claims of nonexertional limitations such as pain, nausea, and vomiting.

The Commissioner responds that the ALJ properly considered the opinions of

10

Plaintiff's physicians, the vocational expert's testimony, and Plaintiff's own testimony regarding her pain, and properly determined Plaintiff was capable of performing work as a surveillance system monitor, table worker, or ticket seller.  (Tr. 267).

### 1. Whether the ALJ erred by failing to give considerable weight to the opinion of Plaintiff's treating physician, Dr. Perez

Plaintiff argues ALJ Calvarese failed to provide sufficient reasons for discrediting Dr. Perez's opinion.  (Doc. 18, p. 1).  Dr. Perez was Plaintiff's rheumatologist.  Id.  The Commissioner suggests there was substantial evidence to support the ALJ's decision that Plaintiff was not disabled.  (Doc. 19, pp. 5-16).  Specifically, the Commissioner contends ALJ Calvarese considered Dr. Perez's opinion and gave proper reasons for rejecting it.  Id.  The ALJ suggested Dr. Perez's opinion "[was] not accompanied by objective medical evidence, conflict[ed] with her own treatment records, and [was] not bolstered by the other evidence of record."  (Tr. 620).

 The opinion of a treating physician, such as Dr. Perez, "must be given substantial or considerable weight unless 'good cause' is shown to the contrary."  Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).  The Eleventh Circuit has determined "good cause" exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  Phillips, 357 F.3d at 1241.  Whenever an ALJ decides to disregard the opinion of a treating physician, the ALJ must clearly articulate the reasons for so doing.  Id.

In this case, the ALJ gave "little weight" to Dr. Perez's opinions due to "[t]he lack

of significant objective findings in the other evaluations and the diagnostic test findings of record." (Tr. 620). ALJ Calvarese, in the same words as ALJ Russell's previous decision, suggested Dr. Perez's opinions "[were] not accompanied by thorough, contemporaneous notes, and her opinions [were] not consistent with the objective medical evidence of record when viewed in its entirety." Id. Again, the ALJ's rationale for discrediting Dr. Perez's opinions were not sufficiently specific.

ALJ Calvarese first suggested Dr. Perez's opinion lacked "significant objective findings." Id. This suggestion is insufficient because the ALJ failed to discuss which impairments lacked objective evidence. Further, not all impairments need, or exhibit, objective signs. For example, the Eleventh Circuit recognizes there is no objective evidence for fibromyalgia. See Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) ("the impairment's hallmark is . . . a lack of objective evidence"). In Moore, the Eleventh Circuit reversed the ALJ's determination that a fibromyalgia claimant's testimony was not credible based on the lack of objective evidence documenting the impairment. Id. Likewise, it was improper for ALJ Calvarese to discredit Dr. Perez's findings as lacking significant objective evidence without giving a full explanation of the alleged deficiencies.

ALJ Calvarese next suggested Dr. Perez's opinions "conflict[ed] with her own treatment records," and "[were] not consistent with the objective medical evidence of record." (Tr. 620). However, the ALJ failed to further discuss any of the alleged inconsistencies between Dr. Perez's diagnosis and her notes. The ALJ also failed to discuss inconsistencies between Dr. Perez's opinions and the other objective medical evidence in the record. Due to inadequate explanation and analysis, the Court is unable

to discern what ALJ Calvarese relied on in reaching his decision that Dr. Perez's opinions were inconsistent. The conclusion that a doctor's opinion is inconsistent with the record, without further explanation, is improper. See Morrison v. Barnhart, 278 F. Supp. 2d 1331, 1336 (M.D. Fla. 2003) (stating that the rejection of a treating physician's opinion on grounds that it is inconsistent with the record as a whole "is too general to permit meaningful review").

While the Commissioner offers numerous inconsistencies the ALJ might have considered in rejecting Dr. Perez's opinions, the ALJ himself did not provide them as his reasons. The Court must focus its review on the reasons provided by the ALJ and not the post hac justifications presented by the Commissioner. Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984). The Court declines to affirm an ALJ's decision simply because some rationale might have supported the ALJ's conclusion. Id. at 1515-16. Because it is impossible to determine whether ALJ Calvarese applied the correct standard in considering the treating physician's opinion, the instant case must be remanded. Id. at 1515. On remand, Dr. Perez's opinion must be re-evaluated and, if it is again rejected, the evidence supporting this conclusion must be specifically discussed.

## 2. Whether the ALJ properly relied on Dr. Drucker's opinion

Plaintiff argues the ALJ erred in relying on Dr. Drucker's consultative examination. Plaintiff suggests Dr. Drucker's opinion is of limited validity "because the issue is whether [Plaintiff] was disabled on or before *December 2005*," but Dr. Drucker's opinion was given in 2008 and was addressing Plaintiff's condition in 2008. (Doc. 18, p. 16) (emphasis in original). The Commissioner suggests Dr. Drucker's examination is

relevant because Plaintiff testified that her pain levels were worse during the 2008 examination than the 2005 examination.  (Doc. 19, p. 15, citing Tr. 831).  The Commissioner's explanation is convincing because it can be presumed that Plaintiff was more limited by the pain in 2008 than 2005.  Thus, if Dr. Drucker believed pain did not prevent Plaintiff from working in 2008, then it is reasonable to assume he would have believed Plaintiff was not prevented from working in 2005.

Plaintiff takes greater issue with the ALJ's partial reference to Dr. Drucker's opinion.  (Doc. 18, p. 17).  ALJ Calvarese mentioned Dr. Drucker's opinion that Plaintiff would not be capable of performing strenuous work, but failed to discuss Dr. Drucker's opinion that Plaintiff would have difficulty performing sedentary work.  (Tr. 620).  Plaintiff suggests the ALJ's failure to reference this part of the opinion is an error.  (Doc. 18, p 17).  The Court agrees.  The ALJ is required to "state with particularity the weight he gave different medical opinions and the reasons therefor."  Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987).  Because the ALJ failed to mention this significant part of Dr. Drucker's opinion, the Court is unable to ensure the ALJ properly considered the doctor's opinion.

Although the Commissioner offers reasons the ALJ might have considered in rejecting this part of Dr. Drucker's opinion, the ALJ himself did not provide them as his reasons.  As noted previously, the Court must focus its review on the reasons provided by the ALJ and not the post hac justifications presented by the Commissioner.  Owens,748 F.2d at 1516.  Because it is impossible to determine whether ALJ Calvarese considered the entirety of Dr. Drucker's opinion, the case must be remanded.  Id. at 1515.  On remand, Dr. Drucker's opinion must be re-evaluated and, if any portion is

14

again rejected, the reasons for and evidence supporting this conclusion must be specifically discussed.

>**3.      Whether the ALJ properly relied on VE testimony when he determined Plaintiff could perform a significant number of jobs that exist in the economy.**

Plaintiff next argues ALJ Calvarese erred in "failing to reconcile differences between the vocational expert's testimony and the Dictionary of Occupational Titles." (Doc. 18, p. 17).  After the hearing, Plaintiff objected to the VE's testimony that Plaintiff could work as a surveillance system monitor, table worker, or ticket seller because these jobs required frequent near acuity.  (Tr. 621).  ALJ Calvarese responded to Plaintiff's objection by finding that "despite the [Plaintiff's] allegations that her vision is affected by medications . . . there is simply no evidence in the record to support [the claim that Plaintiff is unable to perform the listed jobs].  Id.  Plaintiff suggests the ALJ misunderstood the objection as an objection commenting on Plaintiff's vision.  (Doc. 18, p. 17).  Instead, Plaintiff argues she was actually suggesting that she could not maintain frequent near acuity because of her sitting, standing, and walking limitations.  Id.  The Eleventh Circuit has held that, where there is a conflict between the VE's testimony and a job description in the DOT, "the VE's testimony 'trumps' the DOT," and an ALJ may rely solely on the VE's testimony without resolving the conflict.  Jones v. Apfel, 190 F.3d 1224, 1230 (11th Cir. 1999), cert. denied, 529 U.S. 1089 (2000).  Subsequently, the Social Security Administration issued Social Security Ruling 00-4p to clarify standards regarding the use of VEs and vocational specialists ("VS").  SSR 00-4p provides in part:

>When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the

> VE or VS evidence to support a determination or decision
> about whether the claimant is disabled.

SSR 00-4p.  SSR 00-4p further provides, "the adjudicator has an affirmative responsibility to ask about any possible conflict between the VE or VS evidence and information provided in the DOT."  Id.  Following the promulgation of SSR 00-4p, a panel of the Eleventh Circuit, rejected the argument that SSR 00-4p modified Jones.  Miller v. Commissioner of Social Sec., 246 F.App'x. 660, 662 (11th Cir. 2007) (unpublished).  The court held, "even assuming that an inconsistency existed between the testimony of the vocational expert and the DOT, the ALJ did not err when, without first resolving the alleged conflict, he relied on the testimony of the vocational expert."  Id.  Thus, according to Miller, Jones remains binding precedent in this Circuit, notwithstanding the promulgation of SSR 00-4p.  Id.

Regardless if Jones or SSR 00-4p controls, the Court finds no error because there was no conflict.  As the Commissioner points out, the vocational expert was aware of Plaintiff's sitting, standing, and walking restrictions when identifying possible jobs.  (Doc. 19, p. 16, citing Tr. 849-50, 852-53).  The VE testified that he had witnessed each of the three jobs at least once and was aware of the skills necessary for their performance.  (Tr. 855-58).  Thus, it is presumed the VE was aware of the frequent near acuity requirement and considered the requirement when making his suggestion.  By its own terms, SSR 00-4p is violated only if there is an "*apparent* unresolved conflict" and the ALJ fails to discuss and resolve the conflict.  SSR 00-4p (emphasis added).  In the instant case, the undersigned is not convinced there was a conflict, apparent or otherwise, between the VE's testimony and the DOT.  However, as the Court is

16

remanding this case for the ALJ to further consider Dr. Perez's and Dr. Drucker's opinions, it will also direct the ALJ to ensure that any jobs the VE finds Plaintiff able to perform requiring frequent near acuity also conform to Plaintiff's sitting, standing, and walking abilities.

### 4.    Whether the ALJ properly considered Plaintiff's testimony and the effects of nonexertional limitations on her ability to work.

Finally, Plaintiff argues the ALJ erred in evaluating her testimony and the effect of nonexertional limitations, including pain, nausea, and vomiting, on her ability to work. (Doc. 18, p. 20).  The ALJ must consider all of a claimant's statements about symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, 67 F.3d at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). Once a claimant establishes through objective medical evidence that an underlying medical condition exists that could reasonably be expected to produce pain, 20 C.F.R. sections 404.1529 and 416.929 provide that the Commissioner must consider evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms in deciding the issue of disability.  Foote, 67 F.3d at 1561.  Pain alone can be

disabling, even when its existence is unsupported by objective evidence, <u>Marbury v.</u>
<u>Sullivan</u>, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to
pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

In this case, the ALJ properly applied the pain standard.  The ALJ specifically
stated he found Plaintiff's "medically determinable impairments could reasonably be
expected to produce the alleged symptoms," but Plaintiff's "statements concerning the
intensity, persistence and limiting effects of these symptoms [were] not credible."  (Tr.
20).  When an ALJ decides not to credit a claimant's testimony about pain, the ALJ must
articulate specific and adequate reasons for doing so, or the record must be obvious as
to the credibility finding.  <u>Jones v. Department of Health and Human Services</u>, 941 F.2d
1529, 1532 (11th Cir. 1991).  Further, the Code of Federal Regulations sets forth seven
factors an ALJ should consider, in addition to the objective medical evidence, when
assessing the credibility of the claimant's statements: (1) the claimant's daily activities;
(2) the location, duration, frequency, and intensity of pain or other symptoms; (3)
precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of
any medications used to alleviate pain or other symptoms; (5) treatment other than
medication, received for relief of pain or other symptoms; (6) any measures, other than
treatment, used to relieve pain or other symptoms; and (7) other factors concerning
functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. §
404.1529(c)(3); <u>see</u> <u>also</u> Social Security Ruling 96-7p.  A reviewing court will not disturb
a clearly articulated credibility finding with substantial supporting evidence in the record.

Here, ALJ Calvarese did not adequately consider the seven factors or provide
any specific reasons for discrediting Plaintiff's testimony regarding pain.  Instead, the

ALJ selectively summarized the medical evidence. (Tr. 619). The ALJ's summary appears to have focused on the medical records supporting his conclusion and failed to address other evidence which supported Plaintiff. For example, the ALJ noted that Plaintiff's gastrointestinal burning was improving in September of 2003, she was feeling better in October of 2003, and she had good range of motion in November of 2005. Id. The ALJ failed to mention, however, that the MRI in October of 2005 showed spondylolisthesis at L5-S1, for which surgery would not be effective and treatment injections would be necessary every 2-3 weeks, necessitating 2-3 days of rest. (Tr. 615). The ALJ also did not mention Plaintiff's report on May 7, 2003 suggesting pain prevented her from standing "for any length of time," cleaning her house, walking for any length of time, or sleeping without pain medication. (Tr. 87). The ALJ also failed to mention Plaintiff's report to Dr. Smith on October, 11, 2005 of her constant pain and her inability to lift things or do housework. (Tr. 549-51). The sheer number of examinations Plaintiff underwent and the medications administered to Plaintiff tend to support Plaintiff's claims that she was experiencing severe pain, but were not mentioned in the ALJ's summary.

The Commissioner argues Plaintiff lacks credibility because of inconsistencies between medical opinions and Plaintiff's testimony regarding daily activities and personal abilities. (Doc. 19, p. 13). Not only is the Commissioner prohibited from making the ALJ's case post hac, the ability to perform daily activities does not necessarily disqualify a claimant from disability. Lewis, 125 F.3d at 1441; see also Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (noting that when considering daily activities, the entire record must be considered, including claimant's testimony that

she had to lie down after housework).  A conclusory citation to claimant's daily activities as a basis for failing to believe her testimony about pain is insufficient where there was a medical condition that reasonably could have given rise to the pain described.  Foote, 67 F.3d at 1561.

Also, ALJ Calvarese failed to mention Plaintiff's reports of nausea and vomiting. ALJ Calvarese listed "nausea" as a severe impairment, (Tr. 613), but did not discuss the condition further.  In his remand order, Magistrate Judge Snyder specifically directed the ALJ to consider Plaintiff's reports of nausea and vomiting, (Tr. 632-33), yet ALJ Calvarese did not discuss them independently, or in combination with other impairments.  On remand, the ALJ must reconsider the effect of Plaintiff's nausea and vomiting on her ability to perform work.

In sum, ALJ Calvarese did not articulate substantial reasons for discrediting Plaintiff's complaints of nonexertional limitations.  As such, this Court will remand this case with instructions for the ALJ to reconsider Plaintiff's complaints of pain and other subjective symptoms, making sure to apply the proper standard as set forth by the Eleventh Circuit in Foote.  Specifically, the ALJ should determine whether Plaintiff's underlying medical conditions could reasonably be expected to give rise to her alleged pain and subjective symptoms, and should reconsider Plaintiff's credibility when making this determination.  If the ALJ again decides not to credit Plaintiff's testimony about her pain and subjective allegations, the ALJ must articulate specific and adequate reasons for doing so.

## IV.    CONCLUSION

For the reasons stated herein, the Clerk of the Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING** the Commissioner's decision and **REMANDING** the matter to the ALJ with instructions to: (1) review the opinion and findings of Dr. Perez, explain in detail the amount of weight afforded to Dr. Perez's opinions and, if any part of Dr. Perez's opinion is rejected, explain fully why it is being rejected; (2) review the opinion and findings of Dr. Drucker, explain in detail the amount of weight afforded to Dr. Drucker's opinion, and if any part of Dr. Drucker's opinion is rejected, explain fully why it is being rejected; (3) ensure that any jobs with frequent near acuity recommended by the VE conform to Plaintiff's sitting, standing, and walking limitations; and (4) reconsider Plaintiff's testimony in light of all of the evidence, and explicitly articulate the reasons for accepting or rejecting Plaintiff's testimony about her nonexertional limitations.  Finally, the ALJ may conduct any further proceedings deemed necessary in light of any new findings.  The Clerk of Court is directed to enter judgment consistent with this Opinion and Order, and thereafter to close the file.

Should this remand result in the award of benefits, Plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days after the receipt of a notice of award of benefits from the Social Security Administration. **This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.**

**DONE AND ORDERED** at Jacksonville, Florida, this __5th__ day of March, 2012.


_Monte C. Richardson_
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record